PAUL v. SWEARS.

(Supreme Court, Appellate Division, Third Department. May 4, 1910.)

1. SPECIFIC PERFORMANCE (§ 66*)—LAND CONTRACTS.
    A vendor may sue in equity to specifically enforce a contract for the sale of land, though the only way it may be performed by the purchaser is by payment of the price.
    [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 197; Dec. Dig. § 66.*]

2. VENDOR AND PURCHASER (§ 34*)—FRAUD OF VENDOR—MISREPRESENTATIONS AS TO QUANTITY.
    The act of a vendor of land in selling to a purchaser thereof 38 or 40 acres of land, knowing that he has at the most only 40 acres, and knowing that the purchaser wished to buy 50 acres or more, and yet who signed the contract calling for 48 acres, without saying anything, is a fraud on the purchaser, though the broker inducing the sale misrepresented the quantity and the vendor did not directly make any misrepresentation.
    [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 39; Dec. Dig. § 34.*]

3. VENDOR AND PURCHASER (§ 34*)—FRAUD OF VENDOR—EFFECT OF SALE IN GROSS.
    Where the vendor fraudulently misrepresents to a purchaser the quantity of land conveyed, it is immaterial that the sale was in gross rather than by the acre.
    [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 39; Dec. Dig. § 34.*]

4. VENDOR AND PURCHASER (§ 34*)—FRAUD OF VENDOR—ESTOPPEL.
    Where a vendor knowingly permits a conveyance calling for 48 acres, but which in fact conveys only 40 acres, to be executed to a purchaser who wishes to buy and thinks he is buying 48 acres, the vendor cannot contend that the fact that there is a shortage of only 8 acres is immaterial or nonessential.
    [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 39; Dec. Dig. § 34.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. VENDOR AND PURCHASER (§ 43*)—FRAUD OF VENDOR—SHORTAGE OF LAND—FRAUD—REMAINING IN POSSESSION.**

Where a purchaser of land remains in possession without action after the discovery that the quantity of land was fraudulently misrepresented to be greater than it was, he may deprive himself of the right to rescind; but he still has the right to recover damages for the shortage, and to counterclaim therefor in an action for the price.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 68; Dec. Dig. § 43.*]

Appeal from Warren County Court.

Action by James Paul against Allie D. Swears. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

H. A. Howard and James H. Bain, for appellant.
Edward M. Angell and Robert Imrie, for respondent.

COCHRANE, J. This is an action by a vendor in an executory contract for the sale of real estate to require specific performance thereof by his grantee. The contract was made June 23, 1908. By its terms the plaintiff agreed to sell to the defendant a farm "consisting of forty-eight acres more or less" for the sum of $5,500, to be paid when the plaintiff should furnish a warranty deed and a search of the property showing that the same was free and clear of incumbrance. The contract also included substantially all the personal property on the farm. The defendant paid $450 on account of the purchase price, and went into possession of the farm July 1, 1908, and has since retained such possession. Plaintiff on July 20, 1908, tendered a deed and certified search of the farm and demanded payment of the balance of the purchase price thereof, which defendant refused to pay unless a reduction was made therefrom because of a shortage of eight acres in the quantity of land conveyed. By the judgment appealed from plaintiff has recovered the balance of the unpaid purchase price of the farm, amounting to $5,050, less a deduction for a small part of said personal property which the plaintiff failed to deliver; there being under the terms of the contract of sale no other specific performance which defendant could make than the payment of the purchase price. Such an action is maintainable in equity. 26 American & English Encyclopedia of Law (2d Ed.) p. 106.

The answer alleges fraud on the part of the plaintiff in representing that the farm contained 48 acres, when in fact it contained only 40 acres. The learned county judge has found as a fact that no such fraud was perpetrated. This finding is challenged by the defendant.

The defendant applied to a firm of real estate agents for the purchase of a farm containing from 50 to 100 acres. They offered him the farm in question and represented that it contained 48 acres. Their information was obtained from a former owner who without their knowledge in the year 1906 had sold the farm to plaintiff. On discovering that plaintiff was the owner, they placed themselves in communication with him, and he offered to sell the farm with the stock

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and implements thereon for $6,500. Defendant went over the property on two or three occasions and made a careful examination thereof. He was introduced to the plaintiff by one of the real estate agents, and, after some negotiations and considerable difficulty in reaching an agreement as to the price, which agreement was finally effectuated only by the agent promising plaintiff that he would reduce his commissions from $300 to $150, the contract in question was executed. The agent had previously informed the defendant that the farm contained practically 50 acres, and the latter had no information to the contrary and bought the property relying on such statement and on the terms of the contract that the farm contained 48 acres more or less. A surveyor called by the defendant as a witness at the trial testified that the farm contained about 38 acres, and there was no evidence to the contrary.

When plaintiff bought the farm in 1906, he procured a certified search thereof showing that it contained 40 acres, which search, with the subsequent additions necessary to bring it down to the time of the transaction in question, was the same search which he tendered to the defendant in fulfillment of his contract. Plaintiff also testified that he bought the farm "for 40 acres"; that he read the contract wherein he agreed to deliver to the defendant 48 acres more or less; and that he "did not tell the defendant there wasn't 48 acres of that property there."

It thus appears that with knowledge that the farm did not contain more than 40 acres plaintiff sold it to the defendant representing that it contained 48 acres. Ordinary business fairness required that plaintiff should state accurately in his contract the size of his farm as he understood it. The statement in the contract that it contained 48 acres was false, and was known to the plaintiff to be false, and, willing that the defendant should rely thereon and be deceived thereby, he permitted the latter to rest under such misunderstanding, when it was his plain duty both in law and ethics to correct the statement which he knew to be false and prejudicial to defendant. In my opinion the facts constitute a case of fraud, and the finding of the county court to the contrary was not only against the weight of evidence, but is against the admitted facts. It is of no consequence whether or not the plaintiff is responsible for the misstatement of the real estate agents. He is responsible for his own misconduct in selling 48 acres when he was aware that he had no right to represent more than 40 acres in the contract which he signed.

The fact that the sale of this farm may have been in bulk and not with reference to the exact acreage does not affect this question. If there had been no fraud in this transaction, perhaps the defendant would have no grievance on the theory that he purchased the farm as an entirety and without reference to the exact number of acres which it contained. But the authorities holding that proposition do not sanction a fraud or render a vendee immune from relief when he has been made a victim thereof, even though the sale was in gross rather than by the acre. This was expressly held in Thomas v. Beebe, 25 N. Y. 244; the headnote reading as follows:

"When the fraudulent representations relate to the quantity of the land, it is immaterial whether the sale is in gross or by the acre."

The case of Sprague v. Griffin, 22 App. Div. 223, 47 N. Y. Supp. 857, relied on by plaintiff, observes this clear distinction by the following statement in the opinion:

"Representations by the vendor of a tract of land in regard to the quantity where the sale is for a gross sum do not in the absence of fraud bind the vendor to make compensation for any deficiency in the quantity. Johnson v. Taber, 10 N. Y. 319."

But it is said that the discrepancy in the quantity of land was neither essential nor important. This farm was composed entirely of tillable lands, homogeneous in respect to quality. Clearly 40 acres does not possess the same value as 48 acres of the same kind of land. If evidence to that effect is necessary, such evidence was introduced at the trial. Defendant was seeking a farm of from 50 to 100 acres. He supposed he was purchasing about 50 acres, when in fact he was receiving less than 40 acres. It was only after strenuous efforts that the minds of the parties met as to the purchase price. It cannot be said that the difference in acreage did not influence the defendant in making this contract. Plaintiff is in no position to urge that argument after having willfully withheld from the defendant correct information as to the acreage. The only rational explanation of his conduct is that in his opinion if he told the truth he might lose the sale, and his argument now that his deception was immaterial is at war with his conduct in practicing such deception. The same argument might have been used in Thomas v. Beebe, supra, where the discrepancy in acreage was not as great as here in proportion to the land involved.

It is further contended that the defendant, by remaining in possession of the farm after knowledge of the fraud, has placed it out of his power to resist this action. He has undoubtedly deprived himself of the right to rescind the contract; but a defrauded vendee may ratify the contract and recover his damages because of the fraud, or counterclaim the same against the purchase price. The defendant has been deprived of the right to either of these latter remedies because of the error of the court below in finding that there was an absence of fraud.

It is said that the contract was prepared for plaintiff by his agent, and that the plaintiff, in signing it, did not realize the consequences of his act. We are glad to adopt this view of the case, because, while it does not relieve plaintiff of the legal effect of his act, it exonerates him from the charge of intentional wrongdoing.

The judgment should be reversed on the law and facts, and a new trial granted, with costs to the appellant to abide the event. All concur.