Clarence J. FICKBOHM, Plaintiff-
Appellant,

v.

G. E. SCHOONOVER and Julia G. Schoon-
over, Defendants-Respondents.

No. 8910.

Springfield Court of Appeals,
Missouri.

March 11, 1970.

Monroe & Garrett, Monett, for plaintiff-appellant.

Douglas, Douglas & Douglas, Neosho, for defendants-respondents.

HOGAN, Judge.

This is an action for damages for fraud and deceit based upon alleged misrepresentations made to plaintiff by the defendants in connection with the sale of a tract of land. In his petition, plaintiff alleged that defendants falsely and fraudulently represented to him that the tract in question consisted of five acres, when in fact it contained only two and one-half, and that the defendants represented that the water supply was sufficient for household needs and for the purpose of "watering one head of stock," when in fact the water supply was insufficient for either purpose. At the close of plaintiff's evidence, defendant Julia G. Schoonover moved for a directed verdict on the ground that the plaintiff had failed to show "any action or any representation made" by her. Over plaintiff's specific objection that he had shown Mrs. Schoonover signed the contract of sale, the motion was granted, and the cause was submitted against defendant G. E. Schoonover alone. Plaintiff had a verdict and judgment in the amount of $750 against de-

fendant G. E. Schoonover, but moved the trial court for a new trial on the ground that it erred in directing a verdict in favor of defendant Julia. This motion was denied and plaintiff appeals.

In May 1968, plaintiff was looking for a residence near his work. Through a real estate agent, plaintiff heard that defendants' property was for sale, and about the 15th of May plaintiff went to inspect the Schoonover farm. What plaintiff had in mind was "* * * something close to my work and * * * enough acreage I could raise a beef of my own," and consequently he asked about the acreage contained in the defendants' tract. Mr. Schoonover told him there were "approximately five acres, more or less." Plaintiff was not sure what the "more or less" meant, but he walked over part of the property, "it looked like five acres," and he "took [Mr. Schoonover's] word for it honestly that he knew what he owned."

Mr. Fickbohm was also concerned about the water supply, and he asked Mr. Schoonover if the supply was sufficient for cooking, washing, and watering "one or two head of stock." He was assured that it was. On May 18, 1968, defendants, as vendors, and plaintiff and his wife, as purchasers, entered into a contract, by the terms of which defendants undertook to convey "[p]art of the NW of the SW, Sec. 26, Township 25, Range 32, containing [sic] 5 acres more or less, all in Newton County, Missouri." On May 29, 1968, defendants, by general warranty deed, conveyed a tract described as the W ½ of the N ½ of the NW ¼ of the NW ¼ of the SW ¼ of Section 26, Township 25, Range 32, except the road off the west side and except 25 feet off the north side, to plaintiff and his wife. Being unfamiliar with legal descriptions, the plaintiff accepted the deed.

After he bought the property, Mr. Fickbohm was told that his farm contained only two and one-half acres. He had a survey made which showed that, in fact, there were only 2.11 acres in the tract. By the first of August 1968, the well was completely dry. Plaintiff was able to sell the property, but he was obliged to sell it for $2,650 less than he paid, and this action followed.

The sole point tendered for our consideration is whether or not the trial court erred in directing a verdict for defendant Julia G. Schoonover, and on the procedural state of the record, we are limited to determining whether or not there is substantial evidence connecting her with the *written* representation that the defendants' tract contained five acres. The plaintiff, as we have said, alleged fraud in two respects, and he presented evidence tending to show that Mr. Schoonover represented the property involved as a five-acre tract, both orally and in writing. As in other cases involving a directed verdict for the defendant granted at the close of plaintiff's evidence, the plaintiff in this fraud case is entitled to have his evidence accepted as true, and to the benefit of every reasonable inference to be drawn from his evidence, Yerington v. Riss, Mo., 374 S.W.2d 52, 58 [4], but as this court has recently stated, Rule 79.03, V.A.M.R., requires a plaintiff to object definitely and specifically to the trial court's direction of a verdict for the defendant, either orally at the time the motion is sustained, or in writing in his motion for new trial. If the plaintiff does not make known to the trial court his objection to the action and the grounds of his objection in either manner, but contents himself with a general assignment in his motion for new trial, then nothing is preserved for our review. Plumlee v. Ramsay Dry Goods Company, Mo. App., 451 S.W.2d 603; Beyer v. Pick, Mo. App., 428 S.W.2d 1, 3. See also Marquand Develop. Corp. v. Maisak-Handler Shoe Co., Mo., 260 S.W.2d 242, 245 [1]. The plain error rule is not invoked here, as it was in Williams v. Southern Pacific Railroad Co., Mo., 338 S.W.2d 882, and we are therefore limited to review of the single specific objection made by the plaintiff in

the trial court, which was that "we [plaintiff] have shown Mrs. Schoonover signed * * * the Agreement of Sale." It is well established that a fraudulent representation need not be a positive oral assertion; it may consist of deeds, acts or artifices calculated to mislead another, Universal C.I.T. Credit Corporation v. Tatro, Mo.App., 416 S.W.2d 696, 702 [4]; 37 Am. Jur.2d Fraud and Deceit, § 42, pp. 66–67, and our first inquiry is whether in the specific circumstances the agreement of sale amounted to a material misrepresentation for which defendant Julia G. Schoonover could reasonably have been held responsible.

The evidence touching the execution of the contract of sale was not as clear as it might have been. On cross-examination, the plaintiff was shown the contract and was asked if he remembered signing it. He identified his signature. The contract, which is rather ornately styled an "Agreement of Sale," recites, among other things, that it has been executed on the 18th day of May, 1968, between G. E. Schoonover and J. G. Schoonover, as "first party," and Clarence J. Fickbohm and Retta K. Fickbohm, his wife, as "second party." By its terms, the first party, in consideration of the sum of $7,800, agrees to convey "[p]art of the NW of the SW, Sec. 26, Township 25, Range 32, containing [sic] 2–½ ⚡ [sic] acres more or less, all in Newton County, Missouri." (The figure "5" is stricken over in ink, and the figure "2–½" is inserted, again in ink.) The contract further provides, as originally typewritten, that a "[d]eed shall be delivered on the 1st day of July 1968," and that "[p]ossession [is] to be given on or before the 1 day of July 1968." On the original, the date "1st" is crossed over in ink to read "7," and the word "July" is marked over and changed to read "June." In the paragraph relating to possession, the date "1" is stricken over, and the date "7" has been inserted. The last three changes were initialed "G.E.S."

and "C.F.J."; the first alteration, substituting "2–½" for "5," is not initialed and was clearly made with ink different from that used in making the other three changes.

On redirect examination, the plaintiff introduced a carbon copy of the agreement of sale [1] which bears no marks indicating any alteration in the acreage to be conveyed. The last three changes, dealing with delivery of the deed and the date possession was to be given together with the initials "G.E.S." and "C.F.J.," show plainly on the "gold" copy. Plaintiff testified that he received the yellow copy when the agreement of sale was executed, and he was unable to say that any alteration had been made in the number of acres when he received the yellow copy. While the issues tendered here are not quite the same as those usually tendered in cases involving the alteration of instruments, the principles laid down in such cases as Otten v. Otten, 348 Mo. 674, 677–678, 156 S.W.2d 587, 588 [1–4], and Kircher v. Dunnington, 325 Mo. 355, 362, 29 S.W.2d 138, 141 [1], are clearly applicable. The circumstances are such as to destroy the presumption that the first alteration (that in the number of acres) was made at the time the contract was executed, and it was for a jury to determine whether or not the contract originally called for the conveyance of five acres. In our opinion, a jury could reasonably find, on comparing the original and the copy, that it did.

There is a further question whether the contract so considered would amount to a material misrepresentation. It is well established, of course, that when the acreage involved is material, false statements and representations made by the vendor, positively as of his own knowledge, as to the number of acres in the tract being sold are statements of fact, and constitute fraud, McGhee v. Bell, 170 Mo. 121, 135, 70 S.W. 493, 496–497, 59 L.R.A. 761; Ash v. Wiley, Mo.App., 46 S.W.2d 897, 900–901 [3]; Judd

---

1. It is on yellow paper. Counsel referred to it as the "gold" copy.

v. Walker, 114 Mo.App. 128, 134–135, 89 S.W. 558, 560–561, aff'd. 215 Mo. 312, 114 S.W. 979, and the fraud is not merged in the deed, Judd v. Walker, supra, 215 Mo. at 335, 114 S.W. at 980, but the statement or call for an acreage in a contract for the sale of land does not necessarily amount to a representation of the acreage contained in the tract. Where the tract conveyed is definitely described by metes and bounds, or other known specifications, the mention of a quantity of acres is but a matter of description; the metes and bounds described control the call for acreage, and the call for acreage is not a representation as to the number of acres contained in the tract. Cantrell v. McDonald, Mo., 412 S.W.2d 403, 408–409 [2–5] [9]; Wood v. Murphy, 47 Mo.App. 539, 543–544. If, however, the tract is not described by metes and bounds, or if the reference to governmental subdivisions does not definitely fix the boundaries of the tract, the call for acreage may be a material part of the description and of the essence of the contract; such is the case here, we think, where the description in the contract calls merely for a "part" of a specified section, being definitely stated as "5 acres, more or less." MacKinnon v. Weber, 230 Mo.App. 785, 791–792, 75 S.W. 2d 638, 641 [2]. Further, the plaintiff testified that he was motivated to buy the defendants' tract because he needed acreage sufficient to pasture a beef, and that he relied on defendants' representation that the tract contained five acres. Though the consideration was not expressed in terms of price per acre, a jury could reasonably have found that quantity was a material fact in this transaction, see Restatement, Torts, § 538(2) and Comment (d), pp. 86–87, and therefore could have found that the sale was a "sale by the acre." See Anno., 1 A.L.R.2d 9, § 6, p. 18 (1948). To sum up, in the circumstances of this case, a jury could have found that the statement in the contract that defendants' tract was a five-acre parcel was a material representation of fact.

There remains the question whether or not defendant Julia G. Schoonover was in any way "connected" with the contract by the evidence. In our opinion, she was. In the first place, both copies of the agreement of sale, both signed by Mrs. Schoonover, were admitted in evidence without objection, and in general a party who consents to the introduction of a writing in evidence admits its authenticity and its execution, though he does not thereby admit its legal effect. Bartlett v. O'Donoghue, 72 Mo. 563, 564; VII Wigmore, Evidence, § 2132, p. 576 (3rd ed. 1940); 32 C.J.S. Evidence § 733, p. 1068. In the second place, counsel in several places assumed the execution of the contract by Mrs. Schoonover, as when plaintiff was asked by defendants' counsel if defendants' exhibit B was "the original contract which you signed and your wife signed *and Mr. and Mrs. Schoonover signed.*" (Our emphasis.) Moreover, plaintiff was handed the original contract of sale and was asked: "Q. But these are your initials? A. Yes, sir, they are mine. Q. And these are Mr. Schoonover's initials? A. Far as I know. Q. And this is your signature here? A. Yes, that's mine. Q. *And this is the signature of Mr. and Mrs. Schoonover?* A. Yes." (Our emphasis.) It is true that no foundation was laid for the reception of Mr. Fickbohm's testimony that the signature on the contract was Mrs. Schoonover's, but since his conclusion in that respect was received without objection, it was, despite its conclusionary nature, proper evidence for the jury's consideration. See Bourne v. Manley, Mo.App., 435 S.W.2d 420, 428, and cases cited notes 10 and 11.

The plaintiff did not question the adequacy of the verdict in this court, and the error we find upon the record necessitates a new trial only as to defendant Julia G. Schoonover. The cause is therefore reversed and remanded for a new

trial as to defendant Julia G. Schoonover on the issue of her liability only; the verdict as to liability and damages against defendant G. E. Schoonover will be held in abeyance as to both liability and damages until the liability of defendant Julia G. Schoonover is determined, and a judgment will then be entered in the amount of the verdict against all defendants finally held liable. See Lemonds v. Holmes, 360 Mo. 626, 629–630, 229 S.W.2d 691, 693–694 [7] [8].

It is so ordered.

TITUS, P. J., and STONE, J., concur.